IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VALERIE McCLURE,                                    3:16-CV-00542-BR

            Plaintiff,                              OPINION AND ORDER

v.

NANCY A. BERRYHILL,[1]
Acting Commissioner, Social
Security Administration,

            Defendant.


**MERRILL SCHNEIDER**
Schneider Kerr & Robichaux
P.O. Box 14490
Portland, OR 97293
(503) 255-9092

        Attorneys for Plaintiff

--------------------------------

        [1] On January 23, 2017, Nancy A. Berryhill was appointed the
Acting Commissioner of Social Security and pursuant to Federal
Rule of Civil Procedure 25(d) is substituted as Defendant in this
action.


1 - OPINION AND ORDER

**BILLY J. WILLIAMS**
United States Attorney
**JANICE E. HEBERT**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1003

**DAVID MORADO**
Regional Chief Counsel
**RYAN TA LU**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/A 221A
Seattle, WA 98104
(206) 615-2139

          Attorneys for Defendant


**BROWN, Judge.**

     Plaintiff Valerie McClure seeks judicial review of a final

decision of the Commissioner of the Social Security

Administration (SSA) in which she denied Plaintiff's applications

for Supplemental Security Income (SSI) and Disability Insurance

Benefits (DIB) under Titles XVI and II of the Social Security

Act. This Court has jurisdiction to review the Commissioner's

final decision pursuant to 42 U.S.C. § 405(g).

     For the reasons that follow, the Court **AFFIRMS** the decision

of the Commissioner and **DISMISSES** this matter.


### ADMINISTRATIVE HISTORY

     Plaintiff filed her applications for DIB and SSI on

May 4, 2009. Tr. 1119.[2] Plaintiff alleged a disability onset date of January 26, 2007. Her applications were denied initially and on reconsideration. An Administrative Law Judge (ALJ) held a hearing on March 16, 2011. Tr. 72-106. At the hearing Plaintiff was represented by an attorney. Plaintiff, two lay witnesses, a medical expert (ME), and a vocational expert (VE) testified at the hearing.

The ALJ issued a decision on March 24, 2011, in which he found Plaintiff was not disabled and, therefore, was not entitled to benefits. Tr. 19. On January 18, 2012, the Appeals Council entered an order in which it remanded the matter to the ALJ. Tr. 1119.

An ALJ held a hearing on remand on July 23, 2012, and a supplemental hearing on December 19, 2012. Tr. 42-50, 51-71. Plaintiff was represented by an attorney at both hearings. At the July 23, 2012, hearing an ME and a VE testified. At the December 19, 2012, hearing a VE testified. On January 23, 2013, the ALJ issued a decision on remand in which he found Plaintiff was not disabled and, therefore, was not entitled to benefits. Tr. 19-34. On April 14, 2014, the Appeals Council denied Plaintiff's request for review and Plaintiff appealed the matter to the United States District Court.

---

[2] Citations to the official transcript of record filed by the Commissioner on August 18, 2016, are referred to as "Tr."

On April 15, 2015, United States Judge Garr M. King entered a Judgment of Remand in which he remanded the matter to the ALJ to (1) reevaluate Plaintiff's mental impairments; (2) further evaluate Plaintiff's Residual Functional Capacity (RFC); (3) "further evaluate the medical opinions, including but not limited to the opinions by Robert Davis, Ph.D., Joshua J. Boyd, Psy.D., and Bill Henning, Ph.D., and provide adequate rationale for either accepting or rejecting the opinions"; (4) reconsider Plaintiff's credibility; and (5) reevaluate Steps Four and Five. *McClure v. Colvin*, No. 3:14-CV-00973-KI, Docket No. 21.

An ALJ held a hearing on remand on January 5, 2016. Tr. 1607-29. At the hearing Plaintiff was represented by an attorney and an ME and a VE testified. On January 25, 2016, the ALJ issued a decision on remand in which he found Plaintiff is not disabled and, therefore, is not entitled to benefits. Tr. 1119-36. The record does not reflect the Appeals Council assumed jurisdiction over this matter after the ALJ's decision. The ALJ's decision, therefore, became the final decision of the Commissioner on January 25, 2016. *See* 20 C.F.R. §§ 404.984, 416.1484.

## BACKGROUND

Plaintiff was born on November 18, 1983, and was 32 years old at the time of the final hearing. Tr. 107. Plaintiff has a

tenth-grade education.  Tr. 55.  Plaintiff has past relevant work experience as a customer-service representative.  Tr. 1135. Plaintiff alleges disability due to sarcoidosis, depression, arthritis, stomach pain, "heart rate," hiatal hernia, "fatty liver," kidney cysts, and dizziness.  Tr. 320.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 1124-25, 1127-34.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision

if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). It is more than a mere scintilla [of evidence] but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I. The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairments or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a

7 - OPINION AND ORDER

regular and continuing basis despite her limitations. 20 C.F.R.
§§ 404.1520(e), 416.920(e). *See also* Social Security Ruling
(SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a
day, for 5 days a week, or an equivalent schedule." SSR 96-8p,
at *1. In other words, the Social Security Act does not require
complete incapacity to be disabled. *Taylor v. Comm'r of Soc.
Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair
v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform
work she has done in the past. 20 C.F.R. §§ 404.1520(a)(4)(iv),
416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine
whether the claimant is able to do any other work that exists in
the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v),
416.920(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the
burden shifts to the Commissioner to show a significant number of
jobs exist in the national economy that the claimant can perform.
*Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th
Cir. 2010). The Commissioner may satisfy this burden through the
testimony of a VE or by reference to the Medical-Vocational
Guidelines set forth in the regulations at 20 C.F.R. part 404,
subpart P, appendix 2. If the Commissioner meets this burden,
the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1),

416.920(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff has not engaged in
substantial gainful activity since her January 26, 2007, alleged
onset date.  Tr. 1122.

At Step Two the ALJ found Plaintiff has the severe
impairments of sarcoidosis, tachycardia, obesity, chronic
abdominal pain, "learning disorder not otherwise specified,"
depression, post-traumatic stress disorder (PTSD), social phobia,
personality disorder, and substance abuse in remission.
Tr. 1122.  The ALJ found Plaintiff's impairments of hand pain,
headaches, gastric pain, sleep apnea, and seizures are not
severe.  Tr. 1123.

At Step Three the ALJ concluded Plaintiff's medically
determinable impairments do not meet or medically equal one of
the listed impairments in 20 C.F.R. part 404, subpart P, appendix
1.  Tr. 1123.  The ALJ found Plaintiff has the RFC to perform
sedentary work "except that she cannot have interaction with the
public and can have no more than occasional interactions with
coworkers."  Tr. 1125.  The ALJ also found Plaintiff can perform
"entry level work consistent with a specific vocational
preparation (SVP) level of 1 or 2 with a reasoning level of no
more than 2."  Tr. 1125.

At Step Four the ALJ concluded Plaintiff cannot not perform her past relevant work.  Tr. 1135.

At Step Five the ALJ concluded Plaintiff can perform jobs that exist in significant numbers in the national economy. Tr. 1135.  Accordingly, the ALJ found Plaintiff is not disabled.

## DISCUSSION

Plaintiff contends the ALJ erred when he (1) partially rejected Plaintiff's testimony; (2) did not give great weight to the opinion of Robert Davis, Ph.D., reviewing physician; (3) failed to incorporate in his evaluation of Plaintiff's RFC all of the limitations set out by John Nance, Psy.D.; and (4) failed to include all of Plaintiff's limitations in his hypothetical to the VE.

## I.  **The ALJ did not err when he partially rejected Plaintiff's testimony.**

Plaintiff alleges the ALJ erred when he failed to provide clear and convincing reasons for partially rejecting Plaintiff's testimony.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403 (9th Cir.

10- OPINION AND ORDER

1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir.
1991).  The claimant, however, need not produce objective medical
evidence of the actual symptoms or their severity.  *Smolen*, 80
F.3d at 1284.

If the claimant satisfies the above test and there is not
any affirmative evidence of malingering, the ALJ can reject the
claimant's pain testimony only if he provides clear and
convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742,
750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th
Cir. 1995)).  General assertions that the claimant's testimony is
not credible are insufficient.  *Id.*  The ALJ must identify "what
testimony is not credible and what evidence undermines the
claimant's complaints."  *Id.* (quoting *Lester*, 81 F.3d at 834).

At the January 2016 hearing Plaintiff testified she suffers
from nerve pain, hand pain, and arthritis for which she takes
Gabapentin.  Plaintiff noted she stopped going to her mental-
health treatment two or three years earlier because she became
too depressed to attend.  Plaintiff, however, stated she "just
started going back" to therapy "not that long ago."  Tr. 1621.
Plaintiff began taking Lamotrigine and anxiety medication one
month before the hearing for her depression, anxiety, and night
terrors.  Tr. 1622.  Plaintiff testified she experiences
dizziness every day.  Plaintiff also noted she suffers from PTSD,
and, as a result, she does not "go anywhere," is afraid of men,

and "get[s] stressed out [very] easily." Tr. 1624. Plaintiff
testified she does not believe she could do a job "in the back of
a warehouse stuffing boxes of something light away from people
[that] lets [her] sit down if [she] needed to, 40 hours a week"
because she has never been able to handle a 40-hour per week job.
Tr. 1624. Plaintiff stated she "never went every day and stayed
all day" even when she was working full time" because she would
become stressed out and "just leave." Tr. 1624.

The ALJ found Plaintiff's "medically determinable
impairments could reasonably be expected to cause some symptoms,"
but Plaintiff's "statements concerning the intensity, persistence
and limiting effects of [her] symptoms are not credible."
Tr. 1126. The ALJ noted Plaintiff was "inconsistent with
treatment despite her allegations of debilitating symptoms and
limitations." Tr. 1131. For example, the ALJ noted Plaintiff
informed Steven Barry, Ph.D., examining psychologist, that she
had been prescribed Celexa for PTSD and depression, but she was
not taking it even though she told her doctor that she was taking
them. Tr. 711. Dr. Barry found Plaintiff's failure to take
medications "concerning" because Plaintiff acknowledged she was
"getting pretty reasonable relief from anti-depressants."
Tr. 715. Similarly, in April 2015 Plaintiff reported to a
counselor that she had "stopped all my medications" without
advising her primary-care physician that she was doing so because

the medications were making her sleepy and she believed her
doctor did "not seem to know much about them." Tr. 1597.
Nevertheless, Plaintiff acknowledged the medications were helpful
for her PTSD and depression. Tr. 1597. An ALJ may rely on a
claimant's unexplained or inadequately explained failure to seek
treatment or to follow a prescribed course of treatment when
evaluating the claimant's subjective complaints absent medical
evidence that the failure to seek or follow treatment was
attributable to claimant's mental impairment rather than her
personal preference. *Molina*, 674 F.3d at 1113-14.

The ALJ also noted Plaintiff's activities of daily living
suggest greater functioning than Plaintiff alleges. For example,
Plaintiff is the primary caregiver for her two children who are
seven and five years old. Plaintiff's younger child is disabled,
suffers developmental problems, and is in diapers. Plaintiff
lives with her parents, but her mother is disabled and has
medical problems and, therefore, is not providing her with much
assistance.

The ALJ also noted Dr. Barry conducted a psychological
evaluation of Plaintiff in June 2010. Dr. Barry stated he would
"not be interpreting the profile [Plaintiff] produced" in her
Personality Assessment Inventory (PAI) "for a combination of
reasons." First, Plaintiff's high T score was "suggestive of
some level of over-endorsement and expansion of difficulties."

Tr. 714. Second, Plaintiff's Malingering Index raw score was high enough to "raise . . . suspicion concerning an effort to make herself appear very psychologically compromised." Tr. 714. Third, Dr. Barry noted

> a near total disconnect between the symptoms
> [Plaintiff] reported to [Dr. Barry] and at Western
> [Psychological] and in her doctors' offices and
> the symptoms [Plaintiff] endorsed on the PAI. On
> the PAI she endorsed virtually any and all
> symptoms that can be associated with schizophrenia
> and psychotic processes and a formal thought
> disorder. This is not consistent with how she was
> in my office, how she is depicted elsewhere, and I
> can't reconcile this self-report with information
> noted in other settings.

Tr. 714. Dr. Barry also noted "[t]here is the appearance (and I want to stress *appearance*) that the system in which [Plaintiff] lives and functions might be inadvertently reinforcing a particular role with [Plaintiff]." Tr. 715 (emphasis in original).

On this record the Court finds the ALJ did not err when he partially rejected Plaintiff's testimony because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

## II. The ALJ did not err when he did not give great weight to the opinion of Dr. Davis, reviewing psychologist.

Plaintiff alleges the ALJ erred when he did not give great weight to the opinion of Dr. Davis, reviewing psychologist.

A nonexamining physician is one who neither examines nor treats the claimant. *Lester*, 81 F.3d at 830. "The opinion of a

nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* at 831. When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so. *See, e.g., Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999). A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record. *Id.* at 600.

Dr. Davis testified at the July 2012 hearing that Plaintiff's mental impairments are severe enough to meet Listings 12.04 and 12.06. Tr. 63-64. Specifically, Dr. Davis stated Plaintiff has moderate difficulties with activities of daily living and marked difficulties with concentration, persistence, pace, and social functioning. Dr. Davis, however, also noted Plaintiff has not experienced any episodes of decompensation. Tr. 64. Dr. Davis found Plaintiff's difficulties with concentration, persistence, and pace are "largely . . . a matter of the tolerance of normal work stress. She has just not been able to do that and she withdraws from a distressing situation." Tr. 64.

The ALJ did "not give Dr. Davis' opinion great weight" on the ground that the record as a whole, including evidence

submitted after Dr. Davis's testimony,

> is more consistent with the assessment . . . for
> mild limitations in activities of daily living;
> moderate limitations in social functioning;
> moderate limitations in concentration,
> persistence, and pace; and no episodes of
> decompensation.

Tr. 1125. Specifically, the ALJ noted Dr. Nance, reviewing

psychologist, testified at the January 2016 hearing that

Plaintiff does not meet Listings 12.04 or 12.06 because even

though Plaintiff has marked limitations in concentration,

persistence, and pace, she has only mild limitations in her

activities of daily living and moderate limitations in her social

functioning. Tr. 1612-13. Dr. Nance explained Plaintiff has a

mild limitation in her ability to understand and to remember

detailed instructions. Tr. 1614. Dr. Nance stated Plaintiff has

moderate limitations in her ability to carry out detailed

instructions, to work in coordination with others, and to

complete a normal work day and work week without interruptions.

Tr. 1614. Dr. Nance noted Plaintiff's testing indicates her

marked limitations in concentration, persistence, and pace are

"primarily in the area of concentration." Tr. 1614. Dr. Nance

acknowledged Plaintiff's limitations in concentration,

persistence, and pace would likely preclude her from "detailed

work," but "simple work would be possible [for Plaintiff]."

Tr. 1614.

The ALJ also noted Plaintiff underwent a consultative

examination and evaluation with John Adler, Ph.D., in August
2009. Dr. Adler noted Plaintiff was "pleasant, cooperative and
gave decent effort at mental tasks." Tr. 583. Nevertheless,
Plaintiff had "significant trouble with being specific" about her
symptoms. Dr. Alder stated Plaintiff, "when asked to be more
specific, . . . seemed frustrated and at one point said just to
move on to another question (overall [Plaintiff] seemed sensitive
and easily frustrated)." Tr. 584. Dr. Adler concluded Plaintiff

> seemed easily-frustrated and often had trouble
> coping with various stressors (ex: questioning in
> the office), suggesting that her most significant
> mental impairment is coping with stress (ex:
> consistent with her claim of problems at the last
> job, insisting on doing a task her way as opposed
> to as instructed, and her response to quit after
> one day). . . . Mental skills were also a problem
> to an extent, where she had trouble with more
> challenging concentration (digit span),
> calculation, and some with understanding during
> the history (ex: the idea of giving specific
> examples).

Tr. 584.

The ALJ also pointed out that Dr. Barry's June 2010
statement that Plaintiff's high T score on her PAI "is suggestive
of some level of over-endorsement and expansion of difficulties."
Tr. 714. Dr. Barry also noted Plaintiff's Malingering Index raw
score was high enough to "raise . . . suspicion concerning an
effort to make herself appear very psychologically compromised."
Tr. 714. Dr. Barry ultimately concluded Plaintiff is "not
significantly limited" in her ability to carry out short and

simple instructions, to sustain an ordinary routine without special supervision, and to make simple work-related decisions. Tr. 718.

On this record the Court concludes the ALJ did not err when he did not give great weight to the opinion of reviewing psychologist Dr. Davis because he provided clear and convincing reasons supported by substantial evidence in the record for doing so.

## III. The ALJ did not fail to incorporate in his evaluation of Plaintiff's RFC all of the limitations set out by Dr. Nance.

Plaintiff alleges the ALJ erred at Step Three when he failed in his assessment of Plaintiff's RFC to incorporate all of Plaintiff's limitations set out by Dr. Nance.

As noted, Dr. Nance opined "simple work would be possible [for Plaintiff]"; *i.e.*, work that involves "simple kinds of things, repetitive things." Tr. 1614. The ALJ, in turn, found in his evaluation of Plaintiff's RFC that Plaintiff can perform "entry level work consistent with a specific vocational preparation (SVP) level of 1 or 2 with a reasoning level of no more than 2." Tr. 1125. Plaintiff contends the ALJ's conclusion that Plaintiff is limited to work with a reasoning level not greater than 2 conflicts with Dr. Nance's opinion that Plaintiff has moderate limitations in her ability to carry out detailed instructions, to work in coordination with others, and to complete a normal work day and work week without interruptions.

The Dictionary of Occupational Titles (DOT) contains six GED Reasoning Levels that range from Level One to Level Six. *See* U.S. Dep't of Labor, *Dictionary of Occupational Titles* App. C (4th ed. 1991). The DOT defines Reasoning Level 1 as the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.* The DOT defines Reasoning Level 2 as the ability to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variable in or from standardized situations." *Id.*

Plaintiff relies on *Rounds v. Commissioner of Social Security Administration*, 807 F.3d 996 (9th Cir. 2015), to support her assertion that an RFC permitting her to perform jobs with reasoning levels up to 2 does not comport with Dr. Nance's assessed limitations. In *Rounds* the Ninth Circuit held "there [is] an apparent conflict between [the plaintiff's] RFC, which limits her to performing one- and two-step tasks, and the demands of Level Two reasoning." 807 F.3d at 1003. Here, however, neither Dr. Nance nor the ALJ found Plaintiff was limited to one- and two-step tasks. Instead, as noted, Dr. Nance opined Plaintiff was limited to "simple work" that involves "simple kinds of things, repetitive things." In *Rounds* the Ninth Circuit

specifically noted its holding did not extend to instances when the claimant retained the RFC to perform "simple or repetitive tasks." *Id.* at 1004 (citations omitted). In fact, the court noted with approval that "decisions of panels of this Court and opinions from some of our sister circuits have concluded that an RFC limitation to simple or repetitive tasks is consistent with Level Two reasoning." *Id.* at 1004, n.6 (citing *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010); *Abrew v. Astrue*, 303 F. App'x 567, 569 (9th Cir. 2008); *Lara v. Astrue*, 305 F. App'x 324, 326 (9th Cir. 2008); *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005); *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004)).

On this record the Court concludes the ALJ did not fail to incorporate all of Plaintiff's limitations set out by Dr. Nance in the ALJ's assessment of Plaintiff's RFC.

## IV.    The ALJ did not fail to include all of Plaintiff's limitations in his hypothetical to the VE.

Plaintiff alleges the ALJ erred when he failed to include all of Plaintiff's limitations in his hypothetical to the VE. Specifically, Plaintiff alleges the ALJ failed to include limitations identified by Plaintiff in her testimony and by Dr. Davis in his opinion.

As noted, at Step Five the Commissioner must show the claimant can do other work that exists in the national economy.

*Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). The
Commissioner can satisfy this burden by eliciting the testimony
of a VE with a hypothetical question that sets forth all of the
limitations of the claimant. *Id.* The hypothetical posed to a VE
only has to include those limitations supported by substantial
evidence in the record. *Robbins v. Soc. Sec. Admin.*, 466 F.3d
883, 866 (9th Cir. 2006).

The Court has already concluded the ALJ did not err when he
rejected portions of Plaintiff's alleged limitations asserted by
Plaintiff and Dr. Davis. On this record, therefore, the Court
also concludes ALJ did not err when he did not include those
limitations in his hypothetical to the VE.

### CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the
Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 25th day of April, 2017.

*Anna J Brown*

ANNA J. BROWN
United States District Judge